FILED
2011 Feb-10  PM 02:05
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| RICHARD K. HATFIELD, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 5:09-CV-2042-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.     Introduction.

The Claimant, Richard K. Hatfield, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Mr. Hatfield timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Hatfield was forty-one years old at the time of the Administrative Law Judge's ("ALJ's") decision and he has a tenth grade education. (Tr. at

32.)  He worked as an iron worker for the fifteen year period preceding his alleged onset date. (*Id.* at 33-34.)  Mr. Hatfield claims that he became disabled on February 16, 2006, due to degenerative disk disease, status post anterior cervical diskectomy and fusion at C5-6, degenerative joint disk disease of the left shoulder with impingement, and headaches.  (*Id.* at 12.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. § 404.1520(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 404.1520(a)(4)(ii).  Otherwise, the analysis

continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R. § 404.1520(a)(4)(iii).   If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).   If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.* If the  claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.   20 C.F.R. § 404.1520(a)(4)(v).  If the claimant can do other work the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Mr.

Hatfield met the non-disability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 12.) He further determined that Mr. Hatfield had not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Claimant's "degenerative disk disease, status post anterior cervical diskectomy and fusion at C5-6, degenerative joint disease of the left shoulder with impingement, and headaches" are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither met nor medically equaled any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (Tr. at 16.) The ALJ found Claimant's RFC to be as follows:

> Claimant's musculoskeletal impairments precluded his ability to perform the lifting and carrying requirements of medium to heavy work as restrict him to reduced range of light work. That is, he is restricted to the following: Occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. His musculoskeletal impairments also impose limitations in his ability to lift, reach, or pull with his arms above shoulder level. His shoulder problems would preclude the ability to climb ropes, ladders, or scaffolding. These same impairments and his allegations of headaches would preclude ... exposure to concentrations of cold, wetness or humidity and he cannot work around unprotected heights or be around dangerous moving unguarded machinery since he would have agility issues.

(*Id.*)

The ALJ accepted the vocational expert's testimony that, given Claimant's RFC, he is unable to perform any of his past relevant work. The ALJ determined Claimant is a "younger individual," and has a "limited education," as those terms are defined by the regulations. (*Id.* at 18.) The ALJ also determined that Claimant retained the ability to perform a reduced range of light work. (*Id.* at 19.) After considering his "age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Specifically, representative occupations such as an "inspector," a "gluer" and an "assembler" were found to be compatible with Mr. Hatfield's RFC, each with hundreds of jobs regionally and around 160,000 jobs nationally. (*Id.* at 20.)

The ALJ concluded his findings by stating that Claimant "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and that therefore "a finding of 'not disabled' is appropriate." (*Id.* at 19.)

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that  the evidence preponderates against the Commissioner's decision,

the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Mr. Hatfield alleges that the ALJ's decision should be reversed for two reasons.  He contends, first, that the ALJ committed reversible error by finding Claimant could engage in substantial gainful activity despite his very limited daily activities.  Second, he argues that the ALJ committed reversible error by failing to accord controlling weight to the opinions of Dr. Keith Anderson and Dr. Roddie Gantt.

A.   Substantial Gainful Activity.

"Substantial gainful activity" is defined as work activity that involves doing significant physical or mental activities and is the kind of work usually done for pay or profit.  20 C.F.R. § 404.1572.  "Among the factors to be

considered are the time spent in the work; quality of the performance; whether the worker is self-employed; the need for special conditions or supervision; use of experience, skills and responsibilities; and whether the worker contributes substantially to the operation of the business."

Though Claimant contends that the ALJ wrongly found him capable of substantial gainful activity, the record supports the ALJ's decision. Based on the medical evidence of record (as discussed *infra* pp.9-16), the ALJ states that Claimant is capable of a reduced range of light work such as, "occasionally lift[ing] and carry[ing] up to 20 pounds and frequently lift[ing] and carry[ing] up to 10 pounds." (Tr. at 16.) Claimant even testified that he "could sit for 20 to 30 minutes and stand for 25 to 30 minutes, and walk as much as he had to." (*Id.* at 17.)

As the record reveals, Claimant has the ability to engage in many physical activities. Claimant admits that he is able to regularly engage in many activities without assistance. For example, Claimant admitted that he is able to care for his personal needs, such as bathing, grooming and dressing, on a regular basis without any assistance. (*Id.* at 123.) Claimant also admits that he is able to prepare and cook small meals, shop weekly for

his personal needs, and do laundry and household cleaning. (*Id*. at 124.) Three to four times a week, Claimant drives to visit his dad and other family and friends. (*Id*. at 125.) Claimant also cares for several dogs. (*Id*.)

The aforementioned evidence clearly supports the ALJ's decision that Claimant is capable of engaging in substantially gainful activity. Thus, Claimant's first claim is without merit.

B.    Appropriate Weight of Physicians' Opinions.

The ALJ affords a physician's testimony "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted).  The weight afforded a medical opinion on the nature and severity of a claimant's impairments depends upon, among other things: The examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Furthermore, "good cause" exists for an ALJ to give substantially less

weight to a treating physician's opinion when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440).

Additionally, this Court is aware that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d). The Court weighs doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his condition." *Lewis*, 125 F.3d at 1440. Such physician's opinions are relevant to the ALJ's findings, but they are not determinative, since the ALJ bears the responsibility for assessing a claimant's RFC.  *See e.g.,* 20 C.F.R. § 404.1546(c).

Great weight was given to the opinion of Dr. Tapscott because he was

Mr. Hatfield's treating physician, his opinion was based upon thorough examinations and test results, and it was consistent with the medical evidence of record. (*Id.*) Dr. Tapscott treated Claimant for over a year. (Tr. at 13-14.)   Claimant saw Dr. Tapscott on September 13, 2005, with complaints of low back pain as a result of having been in a motor vehicle accident. (Tr. at 13.) Due to low back pain, Claimant underwent physical therapy on eight occasions from September 19, 2005, through October 13, 2005. (Tr. at 14.) At the time of discharge on October 13, 2005, the therapist indicated that all of Claimant's short-term goals and long-term goals had been met. (*Id.*)  Claimant returned to Dr. Tapscott on October 20, 2005 and reported his back was doing a lot better. (*Id.*) On February 16, 2006, Claimant complained of renewed low back and left leg pain, and also pain in the left shoulder. (*Id.*)

Later, Claimant was diagnosed with impingement syndrome of the left shoulder. (Tr. at 14.) He was admitted to the hospital on May 17, 2006, and he underwent arthroscopy of the left shoulder with subacromial decompression and arthroscopic debridement of the left acromioclavicular joint that was performed by Dr. Tapscott. (*Id.*) Claimant tolerated the

procedure  well, and his discharge diagnoses were impingement syndrome and arcomioclavicular joint arthrosis. (Tr. at 14.)

After Claimant underwent post-operative physical therapy, among other things, Dr. Tapscott performed multiple medical imaging tests to monitor Claimant's progress, he  conferred with  colleagues in his practice regarding best treatment plans for Claimant, and he saw Claimant frequently. (Tr. at 14.) Based on this information, Dr. Tapscott  found that claimant could, "frequently lift and carry 1 to 10 pounds , occasionally  lift and carry 11-25 pounds, and never lift and carry 26 to 50 pounds, and occasionally reach above his left shoulder level."  Claimant's July 18, 2006 physical examination of his left shoulder revealed "he had forward flexion to 150 degrees with pain and external rotation of 45 degrees." (Tr. at 15.) On August 25, 2006, Claimant's condition was essentially unchanged, and he was instructed that his care would be transferred to the Pain Clinic following his epidural. (Tr. at 254.) Considering the length of time that Dr. Tapscott treated Claimant and the objective basis on which he formed his medical opinion, the ALJ was justified in according great weight to his opinion.

Although the ALJ considered the February 2007 assessments by the

state agency medical consultants, he gave them little weight because the state agency medical consultants neither examined nor treated Claimant and they did not have an opportunity to review the more recently submitted medical records. (Tr. at 18.) Moreover, little weight was given to the opinion of Dr. Anderson  because he only saw Mr. Hatfield on one occasion, he did not treat Mr. Hatfield, and his opinion was not consistent with the overall record or his own findings. (*Id.*)

Claimant sought out a referral to Dr. Anderson because he was dissatisfied with Dr. Tapscott's non-invasive treatment plan. (Tr. at 270.) Importantly, Dr. Anderson's report begins with several "disclaimers" indicating that his examination was based primarily off of the medical history given to him orally by Claimant because he did not have his medical records. (Tr. at 316.) In his November 7, 2006 report, Dr. Anderson noted that Claimant "has significant decreased range of motion.  He can only actively flex to about 90 degrees and abduct to 90 degrees."  However, Dr. Anderson also noted that he could lift Claimant's shoulder up to about 110 degrees despite Claimant only lifting it to about 90 degrees.

It is difficult to understand how Claimant has a "significant[ly]

decreased range of motion" when Dr. Anderson was able to lift Claimant's shoulder, without any problems, an additional twenty degrees of what Claimant could do on his own.  Dr. Porch, a medical consultant, confirms that Dr. Anderson's opinion is unreliable. (Tr. at 358.) Specifically, Dr. Porch notes a discrepancy in Dr. Anderson's opinion regarding the rate at which Claimant's range of motion decreased. (Tr. at 358.) Dr. Porch explained that this result may have been reflective of Claimant's diminished effort during his exam with Dr. Anderson, or it may have been a result of Claimant not pursuing his home exercise plan as ordered. (Id.)

Although Dr. Anderson noted that Claimant's, "muscle stretch reflexes are decreased, but symmetrical in the upper extremities;" he also found that Claimant's strength was five out of five. (Tr. at 317.)  Again, it is puzzling that Dr. Anderson found decreased muscle stretch reflexes while also finding perfect muscle strength.  Also, Dr. Anderson found that Claimant could not lift or carry any weight even though he had no exam notes regarding limitations on Claimant's right arm strength. (Tr. at 317-318.)  Notably, Dr. Anderson's exam notes focus primarily on Claimant's suitability as an iron worker, not other work. (Tr. 316-317.) Dr. Anderson's only recommendation

was that Claimant cease smoking, which is irrelevant to Claimant's claims of neck and shoulder pain. (Tr. at 316.) In light of Dr. Anderson's exam notes, discrepancies therein and lack of objective or pertinent findings, the ALJ properly limited the weight of Dr. Anderson's opinion.

Although not before the ALJ at the time of decision, Dr. Gantt's opinion was from August and December of 2006 and had no objective indications of debilitating limitations. (Tr. 345-346, 349.) Claimant reported increasing pain to Dr. Gantt, but Dr. Gantt did not perform an X-Ray, MRI, CT scan, or any other medical imaging to support Claimant's complaints. A physician's opinion that is based primarily on a claimant's subjective reports is not entitled to great weight. *See Crawford v. Barnhart*, 363 F.3d 1155, 1159 (11th Cir. 2004). Without these tests or any other medical data, there is no objective medical basis to account for Claimant's reports of allegedly increasing pain. Moreover, Dr. Gantt's opinion lacks credibility because he stated that Claimant was suicidal and homicidal, but did not refer Claimant to a mental health provider. Notably, claims of severe psychological symptoms are absent from Claimant's hearing testimony. In light of these considerations, Dr. Gantt's opinion is not a credible basis for disability.

IV.    Conclusion.

Upon a thorough review of the administrative record, and after considering all of Mr. Hatfield's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accordance with applicable law.  A separate order will be entered.

Done this 10th day of February 2011.

                                        L. SCOTT COOGLER
                          UNITED STATES DISTRICT JUDGE
                                                    153671